**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| ROBIN W.,[1] | § § § | |
| *Plaintiff,* | § § | No. 4:22-cv-1344 |
| v. | § § | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | § § § § | |
| *Defendant.* | § | |

## MEMORANDUM AND ORDER

Plaintiff Robin W. ("Plaintiff") filed this suit seeking judicial review of an administrative decision. ECF No. 1. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act ("the Act").[2] The Parties filed cross-motions for summary judgment. Pl.'s MSJ, ECF No. 9; Def.'s MSJ, ECF No. 11. Plaintiff seeks an order rendering benefits or remand for further

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] On June 29, 2022, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Order Transferring, ECF No. 7.

consideration, arguing that the ALJ erred by not considering Plaintiff's wife's written statement, and failing to include limitations for all of Plaintiff's mental impairments in her RFC assessment. ECF No. 9. Commissioner counters that "the ALJ properly considered the evidence in the record, including opinions of record, and credited the limitations that were the most persuasive and consistent with the record as a whole." ECF No. 11-1 at 11. Based on the briefing, the record, and the applicable law, the Court determines that the ALJ's determination is supported by substantial evidence; therefore, Plaintiff's motion for summary judgment should be denied and Commissioner's motion for summary judgment should be granted.

## I.    BACKGROUND

Plaintiff is 42 years old, R. 38, 172,[3] and completed two years of college. R. 38, 209. Plaintiff worked as a guard, a supervisor, and a buyer. R. 24–25, 50–51, 179–94, 222–28. Plaintiff alleges a disability onset date of October 19, 2018. R. 172. Plaintiff claims she suffers physical and mental impairments. R. 34–50.

On July 10, 2019, Plaintiff filed her application for disability insurance benefits under Title II of the Act. R. 13, 170–78. Plaintiff based[4] her application on

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 6.

[4] The relevant time period is October 19, 2018—Plaintiff's alleged onset date—through December 31, 2023—Plaintiff's last insured date. R. 15. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin,* 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

her seizure disorder, left ankle injury, left knee injury, migraines, and hypothyroid. R. 197–204, 208, 247–55. The Commissioner denied her claim initially, R. 57–70, and on reconsideration. R. 72–99.

A hearing was held before an Administrative Law Judge ("ALJ"). An attorney represented Plaintiff at the hearing. R. 35. Plaintiff and a vocational expert ("VE") testified at the hearing. R. 38, 51. The ALJ issued a decision denying Plaintiff's request for benefits.[5] R. 10–30. The Appeals Council denied Plaintiff's request for

---

[5] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4). The ALJ here determined Plaintiff was not disabled at step five. R. 25–26. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through her date last insured. R. 15 (citing 20 C.F.R. 404.1571 *et seq.*). At step two, the ALJ found that Plaintiff has the following severe impairments: morbid obesity, history of seizure disorder, epilepsy, history of ankle fracture with subchondral cyst formation and chondral defects, history of left knee contusion anteriorly, complex regional pain syndrome (CRPS), mild neurocognitive disorder, history of partial right common peroneal neuropathy, and anxiety disorder. R. 15 (citing 20 C.F.R. 404.1520(c)). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations that would lead to a disability finding. R. 16 (referencing 20 C.F.R. 404.1520(d), 404.1525, and 404.1526). The ALJ found that Plaintiff has the RFC to perform sedentary work as defined in 20 CFR § 404.1567(b). R. 19. However, the ALJ added limitations, including that Plaintiff could push, pull, lift, and/or carry 10 pounds, frequently and occasionally, sit for 6 hours in an 8-hour workday, stand and/or walk 2 hours in an 8-hour workday, would require a sit and/or stand option every 30 minutes, could not engage in crouching, crawling, kneeling, or climbing of scaffolds, ropes, and ladders, could occasionally climb stairs and ramps, should avoid concentrated exposure to extreme heat and cold, exposure to dangerous machinery, unprotected heights, open waters, or open flames, should be limited to performing simple, routine, repetitious work one, two, or three step instructions, and should avoid fast production pace and strict production quotas. R. 19. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform any past relevant work. R. 24. At step five, based on the testimony of the VE and a review of the report, the ALJ concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including document preparer, optical goods worker, and final assembler. R. 25–26. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 26.

review, upholding the ALJ's decision to deny benefits. R. 1–6. Plaintiff appealed the Commissioner's ruling to this court. Compl., ECF No. 1.

## II.     STANDARD OF REVIEW OF COMMISSIONER'S DECISION.

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . ., with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of

treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for that of Commissioner, even if the evidence preponderates against Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (quotations omitted). The "substantial evidence" standard is not a rubber stamp for Commissioner's decision and involves more than a search for evidence supporting Commissioner's findings. *Singletary v. Brown*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting Commissioner's findings. *Singletary*, 798 F.2d at 823. "Only where there is a 'conspicuous absence of credible choices or no contrary medical evidence' will we find that the substantial evidence standard has not been met." *Qualls v. Astrue*, 339 F. App'x 461, 464 (5th Cir. 2009).

## III. THE SHIFTING BURDEN OF PROOF.

An individual claiming entitlement to disability insurance benefits under the

Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

Commissioner applies a five-step sequential process to determine disability status. *Id.* The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Farr v. Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The burden shifts to Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

## IV. COMMISSIONER IS ENTITLED TO SUMMARY JUDGMENT.

Plaintiff raises two issues. First, Plaintiff argues that the ALJ erred in not evaluating Plaintiff's wife's written testimony. ECF No. 10 at 4. Second, Plaintiff argues that the ALJ "erred in not distinguishing [] Plaintiff's ability to understand, remember, and carry out simple instructions from the ability to sustain concentration, persistence, and pace." *Id.* at 7. Commissioner counters that first, "[r]emand is not warranted for the ALJ to discuss the testimony of the third-party witness" because the ALJ fulfilled her obligation to make affirmative findings regarding Plaintiff's subjective complaints. ECF No. 11-1 at 2, 3. Commissioner also responds to Plaintiff's second issue, arguing that "[t]he ALJ's mental RFC finding accommodated all of Plaintiff's work-related mental limitations." *Id.* at 6.

The Court finds that the ALJ did not commit harmful error when she did not expressly evaluate Plaintiff's wife's written statement about the severity of Plaintiff's symptoms, and that the ALJ appropriately accounted for Plaintiff's mental limitations in assessing her RFC.

### A. The ALJ's Failure To Expressly Evaluate Plaintiff's Wife's Statement Was Not Harmful Error.

Plaintiff contends that there is no evidence that the ALJ evaluated her wife's statement, even though SSR 19-3p states that ALJs will consider "non-medical sources such as family and friends" in determining the intensity, persistence, and limiting effects of a claimant's symptoms. ECF No. 10 at 5–6. Plaintiff asserts that

this is harmful error because her wife "provided compelling written testimony about the intensity, persistence, and limiting effects of [Plaintiff's] symptoms," which if persuasive, would have led to a disability finding. *Id.* at 6.

Commissioner responds that the ALJ "acknowledged Plaintiff's subjective complaints," but the objective medical evidence and Plaintiff's daily activities contradicted her allegations of disabling limitations. ECF No. 11-1 at 4–5. Commissioner argues that "[t]he written testimony of Plaintiff's spouse was merely duplicative of Plaintiff's allegations, and like Plaintiff's allegations, was neither credible, nor consistent with, nor supported by the preponderance of the medical and other evidence of record," and therefore, the ALJ "implicitly rejected the duplicative allegations by Plaintiff's spouse," and did not need to make a specific credibility finding as to this statement. *Id.* at 5–6.

"[C]redibility determinations of the ALJ are entitled to significant deference by the court so long as the determination is supported by substantial evidence." *Yeh v. Saul*, No. CV H-20-0562, 2021 WL 4895751, at *6 (S.D. Tex. June 21, 2021) (citing *Byrd v. Astrue*, No. CIV.A.1:07-CV-0111-C, 2008 WL 4414581, at *14 (N.D. Tex. Sept. 30, 2008)). "The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, since he or she has the opportunity to observe the claimant." *Id.*

"When determining the credibility of a claimant's complaints, the ALJ must

engage in a two-step analysis: (1) the ALJ must consider whether there is an underlying identifiable impairment that could reasonably produce the alleged symptoms; (2) the ALJ evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit her ability to perform work-related activities." *Id.* at \*6 (citing *Moynihan v. Saul*, No. 4:19-CV-1396, 2020 WL 5260783, at \*4 (S.D. Tex. Aug. 6, 2020)). The ALJ must consider "both the objective medical evidence and the claimant's statements about the intensity of his or her symptoms. The ALJ may also consider (1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms, (4) the type, dosage, effectiveness and side effects of medication; (5) any treatment, other than medication, for relief of pain or other symptoms; (6) any measures the claimant uses to relieve the pain or other symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." *Id.* (citing SSR 16-3p, 2016 WL 1119029 at \*7).

> Other sources may provide information from which we may draw inferences and conclusions about an individual's statements that would be helpful to us in assessing the intensity, persistence, and limiting effects of symptoms. Examples of such sources include . . . non-medical sources such as family and friends. . . . The adjudicator will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file.

*Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (Oct. 25, 2017).

At the hearing, Plaintiff testified that she cannot work because she "can't drive because of [her] seizures," can't stand, squat, walk, lift, or sit because of her "leg and [her] dizziness and [her] headaches," and she "forget[s] things a lot." R. 39–40. Plaintiff testified that her seizures have worsened over the last few years—she has "absence seizures that last like five days," and "three to four grand mal seizures at the end of it," but will not remember any of it or who anyone is and acts differently. R. 42–43, 45. During these episodes, she will have an absence seizure thirty times a day, normally accompanied by a migraine, which makes her dizzy and her ears ring. R. 43. When this happens, she lays in bed and cannot do anything and "ha[s] people that babysit [her]." R. 43, 45, 46. Plaintiff testified that she struggles with multi-tasking and focusing on and remembering instructions. R. 47. Plaintiff testified that if she is not in an episode, she functions normally, but if she is, then she is completely incapacitated. R. 48.

A couple of days after the hearing, Plaintiff's wife provided a typed, unsworn two-page statement, wherein she detailed her experience with Plaintiff's seizure disorder, migraines, and vertigo. R. 283–84 (4/6/2021 Plaintiff's Wife's Typed Statement). She stated that Plaintiff's seizures have become more frequent over time, and during these seizures, Plaintiff "black[s] out or daydream[s]" for one to two

minutes. R. 283. She also stated that Plaintiff sometimes has seizure clusters that last up to seven days, and during these episodes, Plaintiff cannot care for herself in any way because she becomes child-like and confused, sometimes losing any memory of the event. *Id.* Plaintiff's wife also included a timeline of Plaintiff's seizures between April 2020 and April 2021. R. 284.

The ALJ stated that although she found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 20. The ALJ noted that, in October 2019, Plaintiff "had a normal mental status examination with no dysphasia or aphasia, and "through strict medication compliance, [Plaintiff's] seizures were well controlled," with only a few seizures while on a lower dose of her seizure medication. R. 21.[6] The ALJ also stated that Dr. Daniel Fox, a consultative examiner, observed in October 2020, that Plaintiff "was often tangential, but was easily redirected," "was able to follow a 3-stage command," and "did not appear confused and was oriented to person, place, and time." R. 22.[7] Dr. Fox also observed that Plaintiff's "concentration appeared inadequate," but she "was adequately involved in the intellectual and cognitive

---

[6] *See* R. 72–100 (11/10/2020 Dr. Hanna's Disability Determination); R. 1051–57 (10/23/2019 Dr. Omotola Hope's Treatment Records).

[7] *See* R. 1231–50 (10/23/2020–11/05/2020 Dr. Fox's Consultative Examination Report).

assessment procedures," and her fatigue may have lowered her scores. R. 23.[8] The ALJ further examined the opinions of the Reviewing State Agency physicians, Dr. Michael O'Callaghan and Dr. Henry Hanna, finding that Plaintiff could understand, remember, and carry out simple instructions, concentrate for extended periods, and make simple decisions. R. 24.[9]

And finally, the ALJ found that Plaintiff's routine undercut her testimony. Plaintiff "watched television and played games on her cell phone," "denied needing assistance with managing her personal hygiene," was comfortable using the oven, the stove, and the microwave," "could complete household chores that did not require her to stand form long periods," and "enjoyed watching movies, going to the beach, spending time outdoors, and playing with the family's two dogs." R. 23. The ALJ concluded:

> The claimant's allegations of the intensity and persistence of pain and disabling symptoms were not consistent with medical record signs, laboratory findings, or the medical record as a whole. As previously noted, the examinations did not reflect any evidence of a functional loss. The claimant's allegations of experiencing disabling pain and limitation, made under oath, were not corroborated in the overall record. I considered, but granted little probative weight to the claimant's testimony. As discussed above, the paucity of evidence did not support the claimant's ultimate allegation of disabling pain and limitation.

R. 24.

---

[8] *See* R. 1231–50 (10/23/2020–11/05/2020 Dr. Fox's Consultative Examination Report).

[9] *See* R. 65–69 (1/13/2020 Dr. O'Callaghan's Disability Determination); R. 96 (11/10/2020 Dr. Hanna's Disability Determination).

Here, the record shows that the ALJ thoroughly investigated Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms and carefully explained why she found that the statements were not entirely credible, *i.e.*, because they were not consistent with the opinions and observations within the objective medical record and Plaintiff's own routines. The ALJ did not err in evaluating and discounting Plaintiff's subjective complaints and statements.

Importantly, Plaintiff has failed to provide, and the Court is unaware of any authority requiring an ALJ to expressly evaluate the credibility of every third-party witness in their decision. Instead, authority provides otherwise. *See Fennell v. Comm'r of Soc. Sec.*, No. 3:16CV-261-DAS, 2017 WL 4393098, at *6 (N.D. Miss. Oct. 3, 2017) ("The plaintiff's husband provided a functional report on his wife in which he confirmed plaintiff's reports of limitations in her daily activities. The fact that the ALJ did not mention this statement does not mean that the ALJ did not consider it. In light of the ALJ's well-supported finding regarding the plaintiff's credibility, the court is not convinced that an error, if any, for failing to discuss the husband's statement was prejudicial to the plaintiff."); *Lehman v. Apfel*, No. 7-00-CV-14-AH, 2001 WL 1335902, at *9 (N.D. Tex. Oct. 23, 2001) ("Lehman also contends that the ALJ erred in failing to make specific findings with respect to the credibility of his wife's testimony at the hearing. Mrs. Lehman's testimony did not

present any separate and independent evidence in support of his claimed physical impairments. Rather, her testimony merely related her observations of the physical limitations which Plaintiff himself described in his own testimony. Specific credibility findings on every proffered item of evidence is not required."); *Moore v. Sullivan,* 919 F.2d 901, 905 (5th Cir. 1990) (ALJ did not err in failing to evaluate the credibility of a wife whose testimony "merely related to her observations of the physical limitations" claimant alleged).

Even so, the Court finds that there is nothing within her wife's statement that Plaintiff had not already provided herself and the ALJ subsequently evaluated. Because of the duplicative nature of this evidence, consideration of Plaintiff's wife's statement would not have altered the ALJ's decision as Plaintiff suggests. *See Fennell*, 2017 WL 4393098, at *6; *Lehman*, 2001 WL 1335902, at *9.

## B.     The ALJ Properly Assessed Plaintiff's RFC.

Plaintiff argues that although the ALJ found she had "moderate limitation in concentrating, persisting, and maintaining pace," the ALJ did not include a restriction in her RFC assessment to address this limitation. ECF No. 10 at 7–8. Plaintiff argues that by failing to include this limitation, the ALJ did not "address her own finding that [Plaintiff] has a moderate limitation in concentration, persistence, and pace." *Id.* at 9. Plaintiff asserts that this is "harmful error[] because the outcome of the decision is reasonably likely to be different with this restriction

added to the RFC." *Id.* at 10.

Commissioner responds that "the ALJ's mental limitations did address Plaintiff's moderate limitation regarding concentrating, persisting, and maintaining pace." ECF No. 11-1 at 7. Commissioner argues that "[b]ased on her evaluation of the evidence and findings using the special technique" in SSR 96-8p, "the ALJ found that Plaintiff had severe mental impairments, but that her impairments did not meet or equal a listed impairment." *Id.* The ALJ then assessed Plaintiff's mental RFC by appropriately considering the record's medical opinion evidence, *id.* at 8–9, and the prior administrative medical findings of the State agency psychological consultants, *id.* at 10–11.

"By definition, a claimant's RFC is the most the claimant can still do despite the claimant's impairments and any related symptoms." *Jones v. Saul*, No. 7:19-CV-00137-M-BP, 2020 WL 4756759, at *3 (N.D. Tex. July 21, 2020), *report and recommendation adopted*, No. 7:19-CV-00137-M-BP, 2020 WL 4747531 (N.D. Tex. Aug. 17, 2020) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." *Id.* (quoting SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996)).

"In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting." *Id.* (citing 20 C.F.R. § 404.1545(c)). "The ALJ uses . . . the 'paragraph B criteria' to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." *Id.* (citing 20 C.F.R. § 404.1520a). "While the regulations require the ALJ to evaluate [ ] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Skiles v. Colvin*, No. 4:12-CV-418-Y, 2013 WL 3486921, at *10 (N.D. Tex. July 11, 2013) (citing *Patterson v. Astrue,* No. 1:08–CV–109–C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009)).

Here, the ALJ adequately considered all of Plaintiff's mental limitations in assessing her RFC. At step two, the ALJ found that Plaintiff's history of seizure disorder, epilepsy, mild neurocognitive disorder, and anxiety disorder were severe impairments. R. 15. Then, after discussing each of Plaintiff's non-severe

impairments, the ALJ stated that she "considered all of [Plaintiff's] medically determinable impairments, including those that were not severe, when assessing [Plaintiff's] residual functional capacity." R. 16.

The ALJ then continued to step three, where she found that Plaintiff did not have an impairment or combination of impairments that equaled the severity of one of the impairments enumerated in a Listing. R. 16. The ALJ specifically considered Plaintiff's mental health issues in the four "Paragraph B" categories, including "concentrating, persisting, or maintaining pace." *Id.* Specifically as to this category, the ALJ noted that Plaintiff had a "moderate limitation" as her "concentration appeared inadequate," and "she appeared to stare off into space several times during the clinical interview and was often tangential, but was easily redirected." R. 18. The ALJ also noted that Plaintiff "appeared to have mild difficulty attending to and focusing on task"—"[s]he was unable to count forward by serial 7s and was unable to spell the word WORLD forwards," but "was able to count backward from 20 to 1." R. 18, 12F. The ALJ concluded this section by stating that "[t]he residual functional capacity addressed this limitation with unskilled work." R. 18.

The ALJ also specifically qualified her step three finding, noting that:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following

residual functional capacity assessment reflected the degree of limitation I found in the "paragraph B" mental function analysis.

R. 19.

The ALJ then assessed Plaintiff's RFC, specifically including the following mental limitations: "[Plaintiff] [is] limited to performing simple, routine, repetitious work one, two, or three step instructions. [Plaintiff] should avoid fast production pace and strict production quotas." R. 19.

In assessing Plaintiff's RFC, the ALJ methodically considered the "relevant testimony" and "relevant medical evidence." R. 20–23. As noted above, the ALJ found Plaintiff's medically determinable impairments could cause the symptoms alleged by Plaintiff, but based on the objective medical evidence, not to the degree of intensity, persistence, and limiting effects that Plaintiff testified to. R. 20.

The ALJ then considered Plaintiff's medical history, noting that as of October 2019, Plaintiff's seizures were well-controlled so long as Plaintiff maintained strict medication compliance. R. 21. The ALJ then addressed both of Dr. Fox's examinations. For the December 2019 examination, the ALJ found Dr. Fox's opinion that Plaintiff had the ability to understand, carry out, and remember one-two step tasks in the absence of a seizure, but was unable to understand instructions for complex tasks to be "somewhat persuasive as it was generally consistent with the

examination." R. 21.[10] The ALJ then assessed Dr. Fox's opinion from his second examination in October 2020. The ALJ found Dr. Fox's opinion that Plaintiff was "unable to sustain concentration and persist in work related activity at a reasonable pace due to the variability in her seizures" was unsupported his examinations of Plaintiff. R. 23.[11] As evidence to the contrary, the ALJ remarked that, in these examinations, Plaintiff "appeared to 'stare off into space' several times during the clinical interview, but her attention was easily directed," "was often tangential, but was easily redirected," "was able to follow a 3-stage command," "did not appear confused and was oriented to person, place, and time," and although Plaintiff's "concentration appeared inadequate," she was "adequately involved in the intellectual and cognitive assessment procedures." R. 23.[12] The ALJ also noted that she disagreed with Dr. Fox's opinion because during the assessment, Plaintiff remarked that "she watched television and played games on her cell phone," "denied needing assistance with managing her person hygiene" or getting dressed, "was comfortable using the oven, the stove, and the microwave," "could complete household chores that did not require her to stand [for] long periods," and "enjoyed watching movies, going to the beach, spending time outdoors, and playing with the

---

[10] R. 1058–69 (12/12/2019 Dr. Fox's Consultative Examination Report).

[11] R. 1231–50 (10/23/2020–11/05/2020 Dr. Fox's Consultative Examination Report).

[12] R. 1231–50 (10/23/2020–11/05/2020 Dr. Fox's Consultative Examination Report).

family's two dogs." R. 23.[13]

The ALJ also relied upon the medical opinions of Dr. O'Callaghan and Dr. Hanna, reviewing State Agency physicians, both of whom opined that Plaintiff "could make simple decision[s], concentrate for extended periods, and interact with others," and "could respond to changes." R. 24.[14] The ALJ noted these opinions were "persuasive as they were consistent with and supported by the mental status examinations." R. 24.[15]

Plaintiff's argument both ignores the ALJ's statement that she accommodated for this limitation by only considering unskilled work and dismisses the ALJ's inclusion of other limitations in Plaintiff's RFC, namely that of only performing "simple, routine, repetitive work one, two, or three step instructions," and avoidance of "fast production pace and strict production quotas." These added restrictions clearly address Plaintiff's moderate limitation in concentration, persistence, and maintaining pace. *See Linda Michelle M. v. Saul*, No. 3:19-CV-00328-B-BT, 2019 WL 7762203, at *6 (N.D. Tex. Dec. 27, 2019), *report and recommendation adopted*, No. 3:19-CV-00328-B-BT, 2020 WL 470279 (N.D. Tex.

---

[13] R. 1231–50 (10/23/2020–11/05/2020 Dr. Fox's Consultative Examination Report).

[14] R. 65–69 (1/13/2020 Dr. O'Callaghan's Disability Determination); 72–100 (11/10/2020 Dr. Hanna's Disability Determination).

[15] After determining Plaintiff's RFC, the ALJ then found three unskilled jobs with accommodations for Plaintiff's RFC—that Plaintiff could perform—existed in significant numbers in the national economy, and therefore, determined Plaintiff was not disabled. R. 25–26.

Jan. 28, 2020) ("the ALJ qualified Plaintiff's ability to concentrate for two-hour segments by limiting her to understanding, remembering, and carrying out only *simple* instructions and making *simple* work-related decisions. ... The ALJ's limitation to simple instructions and simple work-related decisions take Plaintiff's moderate limitations into account."); *see also Dunson v. Berryhill*, 2018 WL 1427107, at *6 (N. D. Tex. Mar. 22, 2018) (restricting claimant to "simple tasks" adequately incorporated moderate limitation in concentration, persistence, and pace); *Jones*, 2020 WL 4756759, at *3 ("A finding that a claimant can follow simple instructions adequately incorporates a need for reminders"); *Hall v. Astrue*, No. 3:10-CV-2174-BK, 2011 WL 3510874, at *6 (N.D. Tex. Aug. 9, 2011) ("Plaintiff also avers the ALJ failed to include his mental limitations, specifically his inability to concentrate. However, the ALJ accounted for Plaintiff's mental impairments in his RFC by limiting Plaintiff to performing simple, repetitive tasks."); *Skiles*, 2013 WL 3486921, at *10, n. 19 (citing cases for the proposition that limiting claimant to performing work that required one or two simple tasks and maintaining attention and/or concentration for two hour periods between breaks accommodated moderate limitation in ability to maintain concentration, persistence, or pace).

The ALJ addressed Plaintiff's moderate limitation in concentrating, persisting, and maintaining pace by limiting her to only simple, repetitious, and routine instructions, and avoidance of anything fast-paced or quota-driven.

Furthermore, this RFC assessment is consistent with the record. The medical record indicates that with strict medication compliance, Plaintiff's seizures appear to be controlled. Plaintiff's routine shows that has trouble concentrating, but can redirect, and in her daily life, she takes care of her personal needs, prepares meals, and completes household chores. The opinions of Dr. O'Callaghan and Dr. Hanna directly align with the ALJ's RFC determination.[16] Accordingly, the Court finds that the ALJ accounted for Plaintiff's moderate limitations in determining her mental RFC, and that such determination is supported by substantial evidence.

## V.    CONCLUSION

Therefore, it is **ORDERED** that Plaintiff's motion for summary judgment, ECF No. 9, is **DENIED**. It is further **ORDERED** that Commissioner's motion for summary judgment, ECF No. 11, is **GRANTED**. The decision of the Commissioner is **AFFIRMED**. This case is **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on August 31, 2023.

**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[16] Plaintiff also takes issue with the ALJ's assessment of Dr. Fox's two opinions, arguing that the two opinions are identical and so to accept one as "somewhat persuasive," but reject the other as unpersuasive is nonsensical. ECF No. 10 at 9. The Court finds that the two opinions are not identical. Regarding the first examination, the ALJ found Dr. Fox's opinion that Plaintiff "was unable to understand, carry out, remember instructions for complex tasks," but could "remember instructions for one-two step tasks" was somewhat persuasive. Regarding the second examination, the ALJ found a different opinion of Dr. Fox, that Plaintiff "was unable to sustain concentration and persist in work related activity at a reasonable pace due to the variability in her seizures and her reported inability to stand for long periods," was not persuasive because it "was not supported by the examinations." R. 22–23. As such, this argument lacks merit.